VAN DER VEER, Admr., Appellant,

v.

OHIO DEPARTMENT OF TRANSPORTATION et al., Appellees.

[Cite as *Van Der Veer v. Ohio Dept. of Transp.* (1996), 113 Ohio App.3d 60.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96API02–189.

Decided July 25, 1996.

*Norman C. Hartsel Co., L.P.A.,* and *Norman C. Hartsel; Newcomer &
McCarter* and *N. Stevens Newcomer,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Susan M. Sullivan,* Assistant
Attorney General, for appellee Ohio Department of Transportation.

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of Dorothy Van Der Veer,
administrator ("Dorothy"), from the January 18, 1996 judgment entry of the
Court of Claims of Ohio.

The history of this case is as follows: A complaint in wrongful death was filed
by Dorothy Van Der Veer, as the administrator of the estate of Steven J. Van
Der Veer, on behalf of herself and the next of kin. Dorothy was the mother of
the decedent. The complaint was filed in the Court of Claims of Ohio against
appellees, the Ohio Department of Transportation, and the Department of
Administrative Services. The parties stipulated that the state of Ohio was liable
in damages. Thereafter, the parties stipulated that the aggregate amount of all
damages was $300,000, including an unstated amount for the total loss of the
motor vehicle and funeral and burial expenses in the amount of $8,753.97.

At the time of his death, decedent was survived by his parents (Dorothy and
Robert Van Der Veer) and three adult brothers and an adult sister. Decedent
had several life insurance policies which named Dorothy as the beneficiary. Two
of these policies were with Harvest Life Insurance, and Dorothy was named as
the sole beneficiary under both of these policies. One of the Harvest Life

Insurance policies also provided for an accidental death benefit. Pursuant to these two policies, Dorothy received a death benefit of $290,069. Dorothy also received half of the death benefit of a $100,000 policy with Western and Southern Life Insurance ($50,000). Decedent's father, Robert Van Der Veer, received the other half of the benefit under the Western and Southern Life Insurance policy ($50,000). The remaining policy was a group term life insurance policy through Royal Macabees Insurance Company, which also provided for accidental death and dismemberment ("AD & D") benefits. Pursuant to this policy, Dorothy and Robert Van Der Veer each received $9,750. The remainder of the benefit ($19,500) went to decedent's estate.

Of the $429,069 received under the policies of insurance, $328,121 represented the ordinary death benefits, and $100,948 represented insurance proceeds which became payable solely because the decedent's death was the result of an accident ("AD & D Proceeds").

Pursuant to R.C. 2743.02(D), the Court of Claims reduced the agreed amount of damages, $300,000, by the amount of death benefits that were received pursuant to the life insurance policies ($300,000 minus $429,069). This resulted in a net judgment of $0.00. Dorothy, in her capacity as administrator, appealed and asserts the following assignments of error:

"I. The Court of Claims erred when it concluded that life insurance proceeds received by reasons of the wrongful death of plaintiff's decedent were 'collateral sources' within the meaning of R.C. § 2743.02(D).

"II. The court of common please [sic] erred when it did not distinguish between proceeds of life insurance received from whole life participating policies purchased by the decedent and group term life insurance benefits received by reason of the death of the plaintiff's decedent.

"III. The Court of Claims should have found R.C. § 2743.02(D) to be unconstitutional. Inherent in statutory construction of statute and implicit from discussions because of *Taylor* [sic]."

We will first address appellant's third assignment of error, insofar as appellant argues that R.C. 2743.02(D) violates the constitutional guarantees of equal protection and due process. Appellant cites *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 633 N.E.2d 504, in support of the proposition that a statute which reduces an award of damages by the amount of collateral benefits is unconstitutional. In *Sorrell*, the court found that R.C. 2317.45 infringed upon the jury's ability to award damages and, therefore, affected one's fundamental right to a trial by jury. Because a fundamental right was involved, the *Sorrell* court applied a strict scrutiny test to the statute. The court found that the statute was unconstitutional because it required trial courts to deduct collateral benefits from

a jury award regardless of whether the collateral benefits were actually duplicated in the jury's verdict. *Id.* at 422, 633 N.E.2d at 510.

In the instant action, appellant challenges the constitutionality of R.C. 2743.02(D), which provides:

"Recoveries against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant. * * * *"

This court initially notes that legislative enactments enjoy a presumption of constitutionality. *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus; *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97. Moreover, courts must, to the extent reasonably possible, construe a statute so as to uphold a challenged statute if at all possible. *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 260, 269, 652 N.E.2d 952, 960; *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 289, 595 N.E.2d 862, 867.

Generally speaking, the analyses for due process and equal protection are identical, and the only substantial difference between substantive due process and equal protection is that legislation reviewed under equal protection involves a classification. See *Morris v. Savoy* (1991), 61 Ohio St.3d 684, 706–707, 576 N.E.2d 765, 781–782 (Sweeney, J., concurring in part and dissenting in part).

A statutory classification which involves neither a suspect class nor a fundamental right does not violate the Equal Protection Clauses of the Ohio and United States Constitutions if it bears a rational relationship to a legitimate governmental interest. *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181, 183. Likewise, a statute challenged on due process grounds will be deemed valid if it (1) bears a real and substantial relation to the public health, safety, morals or general welfare of the public, and (2) if it is not unreasonable or arbitrary. *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717; *Morris, supra,* 61 Ohio St.3d at 689, 576 N.E.2d at 770.

We will first address appellant's equal protection argument. In the instant action, appellant does not argue that a suspect class is involved. Nor is a fundamental right involved, insofar as the right to sue the state does not constitute a fundamental right. See *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 355, 639 N.E.2d 31, 35 (holding that because the General Assembly has the power to define the contours of the state's liability, within the constraints of equal protection and due process, the right to sue the state is not fundamental).

 Nor is the fundamental right to a jury involved since this action was brought in the Court of Claims. See *Belding v. State ex rel. Heifner* (1929), 121 Ohio St. 393, 169 N.E. 301; *Sorrell, supra.* In cases involving a claim against the state of Ohio, the right to a jury does not exist. See *Belding; Sorrell, supra.* Such a right did not exist at common law simply because the state had immunity and suits could not be brought against the state. As noted by the Ohio Supreme Court in *Fabrey*, 70 Ohio St.3d at 355, 639 N.E.2d at 35:

" * * * Thus, in *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 633 N.E.2d 504, we held that *Section 5, Article I of the Ohio Constitution does not provide for a jury trial in all cases, but only in those for which the right existed at common law.* * * *

" * * * The immunity of the defendants in this case is not such an infringement of a preexisting right. It is, rather, in accord with a traditional common-law principle. We hold, therefore, that R.C. 2744.02(B)(4) does not violate Section 16, Article I of the Constitution of Ohio." (Emphasis added.) *Id.* at 355, 639 N.E.2d at 35.

Given that neither a suspect class nor a fundamental right is involved in this case, this court must apply a rational basis test. *State ex rel. Abde v. Police & Firemen's Disability & Pension Fund* (June 25, 1996), Franklin App. No. 96APD02–126, unreported, 1996 WL 362083. Under a rational basis analysis, a statutory classification does not violate equal protection if it bears a rational relationship to a legitimate governmental interest. *Roseman v. Firemen & Policemen's Death Benefit Fund* (1993), 66 Ohio St.3d 443, 613 N.E.2d 574.

In applying a rational basis test, the Ohio Supreme Court has utilized the following analysis:

"Our analysis in *Menefee* reflected a two-step process, whereby the court is first required to identify a valid state interest and then required to determine whether the method or means by which the state has chosen to advance that interest is rational." *Buchman*, 73 Ohio St.3d at 267, 652 N.E.2d at 959.

In the instant action, R.C. 2743.02(D) provides that a judgment against the state is to be reduced by the aggregate amount of insurance proceeds, or other collateral recovery received by the claimant. Both conserving fiscal resources and providing recovery for injured persons who have no source of reimbursement for their damages constitute a valid governmental interest. Cf. *Menefee*, 49 Ohio St.3d 27, 550 N.E.2d 181.

The Supreme Court of the United States has declared that the preservation of fiscal integrity is a valid state interest. See *Shapiro v. Thompson* (1969), 394 U.S. 618, 633, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600, 614. Thus, this court must next determine if the method or means by which the state has chosen to advance

those interests is rational. *Buchman,* 73 Ohio St.3d 260, 652 N.E.2d 952. We find that there is a rational relationship between conserving fiscal integrity and the classification created by the statute. In *Menefee,* the Supreme Court of Ohio upheld R.C. 2744.05(B),[1] which provided for the offset of insurance benefits in a suit against a political subdivision. The court noted that R.C. 2744.05(B) served two purposes, as follows:

" * * * It conserves the fiscal resources of political subdivisions by limiting their tort liability. Secondly, it permits injured persons, who have no source of reimbursement for their damages, to recover for a tort committed by the political subdivisions." *Menefee,* 49 Ohio St.3d at 29, 550 N.E.2d at 183.

The insurance company in that case argued that R.C. 2744.05(B) denied equal protection, and that it was entitled to bring an action under the subrogation provision in its insurance policy. The court disagreed, noting as follows:

" * * * In a rational-basis analysis, we must uphold the statute unless the classification is *wholly irrelevant* to achievement of the state's purpose. * * *

"Most significantly, a state has a valid interest in preserving the financial soundness of its political subdivisions. * * * Further, the state can make the rational determination to permit recovery by an unprotected victim but deny subrogation to insurance carriers who can make actuarial computations * * *. Accordingly, a rational basis can be conceived to justify a classification in which subrogation claims are treated differently from other claims against a political subdivision." (Emphasis *sic.*) *Id.,* 49 Ohio St.3d at 29, 550 N.E.2d at 183.

In the instant action, R.C. 2743.02(D) permits some victims full recovery from the state, while the recovery of other victims is reduced by the amount of collateral benefits they have received. To permit recovery by an unprotected and uncompensated victim, while denying or reducing recovery to a victim who has already procured some recovery via insurance benefits, promotes fiscal integrity. Further, R.C. 2743.02(D) serves to protect the state from excessive damage awards, which are ultimately paid by the taxpayer. See *Mitchel v. Borton* (1990), 70 Ohio App.3d 141, 590 N.E.2d 832; *Grange Mut. Cas. Co. v. Columbus* (1989), 49 Ohio App.3d 50, 550 N.E.2d 524.

Moreover, in this manner, all victims are compensated, either by insurance, by an award against the state, or a combination of the two. For both of these reasons, the statute protects the general welfare of the public. For all of the above reasons, we find that R.C. 2743.02(D) is rationally related to a legitimate

---

1. See, also, *Mitchel v. Borton* (1990), 70 Ohio App.3d 141, 590 N.E.2d 832, applying R.C. 2744.05(B).

governmental interest, and appellant's equal protection challenge is not well taken.

We will next address appellant's due process argument. Given that neither a suspect class nor a fundamental right is involved in this case, this court must apply a rational basis test. A rational basis analysis provides that when a statute is challenged on due process grounds, it will be deemed valid if it (1) bears a real and substantial relation to the public health, safety, morals, or general welfare of the public and (2) if it is not unreasonable or arbitrary. *Mominee,* 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717.

Clearly, the conservation of fiscal resources and providing recovery for injured persons who have no source of reimbursement for their damages are considerations that bear a real and substantial relation to the general welfare of the public. We cannot find that the challenged statute is unreasonable or arbitrary. Given that the state has voluntarily consented to be sued, we find that the state may qualify and draw perimeters around the granted right without violating due process or equal protection. See *Conley,* 64 Ohio St.3d at 291, 595 N.E.2d at 868; *Grange Mut. Cas. Co.,* 49 Ohio App.3d at 52, 550 N.E.2d at 526–527.

Accordingly, we hold that R.C. 2743.02(D) does not violate due process or equal protection. For all of the above reasons, appellant's third assignment of error is overruled.

In the first assignment of error, appellant argues that the trial cou erred in concluding that life insurance proceeds constitute collateral sources for purposes of R.C. 2743.02(D). R.C. 2743.02(D) provides:

"Recoveries against the state *shall be reduced by the aggregate of insurance proceeds,* disability award, *or other collateral recovery received by the claimant.* * * *" (Emphasis added.)

It is axiomatic that words and phrases used in statutes are to be given their plain and ordinary meaning, absent evidence to the contrary. R.C. 1.42. An unambiguous statute is to be applied, not interpreted. *State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.* (1987), 32 Ohio St.3d 24, 512 N.E.2d 332. No evidence has been presented that the legislature intended to exempt life insurance proceeds when it enacted R.C. 2743.02(D). Accordingly, this court finds that the language "insurance proceeds" includes life insurance proceeds. Therefore, we find that life insurance proceeds constitute collateral benefits for purposes of R.C. 2743.02(D).

The next issue presented in appellant's first assignment of error pertains to the language of R.C. 2743.02(D) that provides that an award against the state shall be reduced by collateral recovery *received by the claimant.*

There are several claimants in this case, even though appellant, in her capacity as the personal representative of the decedent's estate, is the proper "party" to bring a wrongful death lawsuit. R.C. 2125.01. It is well established that the decedent's next of kin (which include appellant in her *personal* capacity, decedent's father, and decedent's siblings) constitute the real parties in interest in such a case, and each has a separate claim. See *Burwell v. Maynard* (1970), 21 Ohio St.2d 108, 50 O.O.2d 268, 255 N.E.2d 628; *Cincinnati Ins. Co. v. Phillips* (1990), 52 Ohio St.3d 162, 556 N.E.2d 1150.

In the instant action, Dorothy Van Der Veer, *in her personal capacity*, received insurance proceeds totaling $349,819, because she was the named beneficiary on several policies. Decedent's father, Robert Van Der Veer, received a total of $59,750 pursuant to the insurance policies. The remainder of the benefits ($19,500) went to decedent's estate. It is undisputed that decedent's four siblings received no insurance proceeds, as none of them were named beneficiaries under the various policies.

Appellant argues that, if life insurance proceeds are deemed to be collateral sources, and if they are used to reduce a damages award, these proceeds should reduce the award of the claimant who actually received insurance proceeds. In other words, appellant argues that the award in this case ($300,000) should first be allocated among the next of kin who suffered loss because of decedent's wrongful death. Then, each claimant's share of the award should be reduced by the amount of insurance proceeds that he or she received. We agree.

The plain language of R.C. 2743.02(D) provides:

"Recoveries against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery *received by the claimant.* * * *" (Emphasis added.)

Appellee argues that appellant and decedent's next of kin have waived this argument by virtue of the agreed entry and the releases that were executed in this case. Appellant argues that when the parties signed the agreed entry, everyone recognized that appellant fully intended to appeal to this court in order to challenge the constitutionality and application of R.C. 2743.02(D) to the facts of this case. Clearly, the releases in this case released all claims *except* for appeals *from the agreed judgment entry.* The releases do not state that claimants would only appeal the issue of R.C. 2743.02(D)'s constitutionality. Thus, appellee's argument that appellant has "waived" the arguments regarding the application of R.C. 2743.02(D) is not well taken.

Moreover, the burden of proving that one is entitled to a setoff for collateral benefits is on the defendant, which is the state in this case. Cf. *Buchman*, 73 Ohio St.3d 260, 652 N.E.2d 952 (construing R.C. 2744.05[B], which

provided for reducing a judgment against a political subdivision by the amount of collateral benefits received by a claimant). In *Buchman*, the Ohio Supreme Court also found that a collateral benefit could be deducted from the jury's award only if some portion of that jury award corresponded to the collateral benefit. Thus, where the children of a decedent had received social security benefits, but no part of the jury's verdict was awarded to decedent's children, the court refused to set off the social security benefits that the children had received from the verdict. *Id.* at 265, 652 N.E.2d at 958. As noted by the *Buchman* court:

"* * * Although *Morris* and *Sorrell* evince a certain amount of tension on the court over the viability of collateral benefit offset statutes, the one inexorable source of agreement seems to be that *there shall be no constitutionality without a requirement that deductible benefits be matched to those losses actually awarded* by the jury." (Emphasis added.) *Id.* at 269, 652 N.E.2d at 960. See, also, *Freeman v. Univ. of Cincinnati* (1989), Ohio Ct.Cl. No. 87–07908, unreported.

In the instant action, the award was rendered by the trial judge as opposed to the jury. However, we find the reasoning of *Buchman* persuasive and remand so that a determination may be made as to what portion of the award corresponds to the collateral benefit received by Dorothy Van Der Veer, in her personal capacity, and Robert Van Der Veer.[2] Appellant's first assignment of error is sustained in part and overruled in part.

In her second assignment of error, appellant argues that the trial court erred when it did not make a distinction between proceeds of life insurance received from whole life participating policies purchased by the decedent and group term life insurance benefits received by reason of the death of the appellant's decedent. Given the plain language of the statute providing that recoveries against the state shall be reduced by "insurance proceeds," we cannot find that the trial court erred in refusing to make such a distinction. Evidently, the legislature chose not to make distinctions between various types of insurance but chose to include all insurance proceeds. Such a distinction is better left to the legislature.

In her reply brief, appellant further argues that there is no "rational basis" for classifying life insurance, particularly whole life policies, differently from any other investment property owned by the decedent at the time of his death. As noted above, the legislature chose to include various sources of collateral recovery, while others, such as investment property, are not specifically mentioned.

---

**2.** This court notes that the *estate* received $19,500 of insurance proceeds. This factor should be considered when apportioning the damages award and offsetting amounts of insurance proceeds received by claimants.

In a case such as this, the state has an interest in conserving fiscal resources while providing recovery for injured persons who have no source of reimbursement for their damages. The legislature is in a better position to balance these interests, and it is therefore within the legislature's province to determine what type of reimbursement (whether it be from insurance proceeds, bank accounts, and/or investment properties) should be included or excluded as a collateral source when recovery against the state is sought. Appellant's second assignment of error is overruled.

For all of the above reasons, appellant's first assignment of error is sustained in part and overruled in part, and appellant's second and third assignments of error are overruled. This matter is remanded to the Court of Claims of Ohio for further proceedings consistent with this opinion.

It should be noted that our remand to the Court of Claims of Ohio, however, is limited by R.C. 2125.03(A)(1), which provides as follows:

"The amount received by a personal representative in an action for wrongful death under sections 2125.01 and 2125.02 of the Revised Code, whether by settlement or otherwise, shall be distributed to the beneficiaries or any one or more of them. *The court that appointed the personal representative shall,* except when all of the beneficiaries are on an equal degree of consanguinity to the deceased person, *adjust the share of each beneficiary in such manner as is equitable,* having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries. * * * " (Emphasis added.)

Accordingly, we remand this matter to the Court of Claims of Ohio for the sole purpose of remanding the matter to the Probate Court of Hancock County. Pursuant to R.C. 2125.03, the Probate Court of Hancock County shall apportion the damages award among the claimants in this case, and set off each claimant's share of the award by the proceeds *actually received* by him or her. R.C. 2743.02(D). After this apportionment, the Court of Claims of Ohio shall then enter any judgment against the state, if appropriate.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

BOWMAN and TYACK, JJ., concur.